IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

GARY BOUE,
      Plaintiff,

v.                                                                       Civil Action No. 1:17cv505

JAMES MATTIS,
U.S. Secretary of Defense,
      Defendant.

## MEMORANDUM OPINION

Plaintiff, a high school teacher currently employed by the Department of Defense Education Activity ("DoDEA") at Ramstein Air Base, Germany, asserts three claims against his employer: (i) plaintiff claims the DoDEA denied him two positions because of his race/ethnicity (Hispanic) and gender (male);[1] plaintiff claims the DoDEA discriminated against him on the basis of his age (67);[2] and (iii) plaintiff further claims that the DoDEA issued him a letter of reprimand in retaliation for him filing a complaint with the Equal Employment Opportunity Commission ("EEOC").[3]

---

[1] 42 U.S.C. § 2000e-2(a)(1) makes it unlawful "for an employer [] to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

[2] 29 U.S.C. § 623(a) makes it "unlawful for an employer [] to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."

[3] 42 U.S.C. § 2000e-3(a) makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment. . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.").

At issue on defendant's summary judgment motion is: (i) whether plaintiff has established *prima facie* cases of race, sex or age discrimination; (ii) whether the summary judgment record reflects there is a triable issue of fact as to whether defendant proffered of a legitimate non-discriminatory reason for not selecting plaintiff for the two positions; (iii) whether the summary judgment record would permit a reasonable juror to believe that defendant's proffered non-discriminatory reason is pretext for discrimination; and (iv) whether the record creates a triable issue of facts as to whether the letter of reprimand plaintiff received was an adverse employment action caused by plaintiff engaging in protected activity, namely filing an EEOC complaint. *See* Def.'s Mot. Sum. J.

Because defendant's motion for summary judgment has been fully briefed and argued, it is now ripe for disposition.

## I.

The following facts are pertinent to the resolution of the Secretary's motion for summary judgment:[4]

- o DoDEA is an agency of the United States Department of Defense that establishes and administers schools for the education of dependents of military members in the United States and abroad.

---

[4] The facts recited here are derived from the summary judgment record. As required by Local Rule 56 and the Scheduling Order, defendant properly set forth its statement of undisputed fact in separately numbered paragraphs. Although plaintiff, in his response, identified each statement of fact that he contested, he did not, as the Rule requires, "cit[e] the parts of the record relied on to support the facts alleged to be in dispute." E.D. Va. Loc. R. Civ. P. 56(B). In order to establish a disputed fact, plaintiff must cite the record evidence that contradicts defendant's asserted undisputed fact(s). In the circumstances presented here, where plaintiff failed to comply with the rule, it would be appropriate to "assume that [the] facts identified by the moving party in its listing of material facts are admitted." *Id.* This was not done; instead, the record has been scoured to determine whether the voluminous record provides by plaintiff creates any triable issue of fact.

- Plaintiff is currently employed by DoDEA as a health and sociology teacher at Ramstein High School located on Ramstein Air Base in Germany.

- Plaintiff is a sixty-seven (67) year old male who self-identifies as Hispanic.[5]

- On April 21, 2008, DoDEA advertised a vacancy for a health education distance learning ("distance learning") teacher.

- To be qualified for the advertised distance learning position, as set forth in the vacancy announcement, the applicant (i) must be able to "plan, organize, and present information and instruction via an online content delivery system," (ii) must "have experience teaching via distance learning," and (iii) should have "recent[] experience related to modern teaching techniques and the ability to carry out online instruction." Def.'s Exhibt B2 (Doc. 45-5.)

- Plaintiff applied for the distance learning position.

- DoDEA determined that plaintiff was minimally qualified for the distance learning position and referred plaintiff to the hiring official, Patricia Riley. Ms. Riley and Barbara Weigand, another DoDEA employee Ms. Riley selected to assist her with the evaluation process, determined that plaintiff should be interviewed for the position.

- Ultimately plaintiff was not selected for the distance learning position. In fact, none of the original applicants were selected, requiring DoDEA to re-post the vacancy and solicit new applications.

- Plaintiff did not apply for the distance learning position a second time and ultimately Jaclyn Stockton-Sooy ("Stockton-Sooy"), a Caucasian female who was approximately plaintiff's age,[6] was hired for the distance learning position.

- Stockton-Sooy, like the plaintiff, had many years of classroom experience teaching health related subjects.

- Unlike plaintiff, however, Stockton-Sooy had experience developing virtual curriculum and online course work.[7]

---

[5] Plaintiff's mother is Hispanic and his father is French.

[6] Plaintiff testified at his deposition that "Ms. Stockton-Sooy was almost [his] age." Pl.'s Dep., Oct. 20, 2015, 7:7–8.

3

- On May 20, 2008, DoDEA advertised a vacancy for an Instructional Systems Specialist (foreign language) ("ISS-FL").

- After learning he had not been selected for the distance learning position, plaintiff applied for the ISS-FL position.

- The ISS-FL position involved overseeing all foreign language curricula throughout DoDEA schools in Europe, including developing a district-wide evaluation program and providing staff development services.

- The vacancy announcement for the ISS-FL position noted that to qualify for the position applicants needed to be certified in one foreign language and possess "experience" with "more than one" foreign language. The Vacancy Announcement further instructed that candidates would be evaluated based on their narrative responses to six "Knowledge, Skills and Abilities" ("KSA") questions.

- Plaintiff did not initially apply for the position, but he did apply when the position was re-advertised for a second time.[8]

- Plaintiff was referred to the evaluation panel by DoDEA's human resources division, which certified that plaintiff met the position's minimal qualifications.

- The evaluation panel, which consisted of Laurel Eisinger, Reynaldo Toquero and David Markewitz, considered twelve (12) candidates for the ISS-FL position, including plaintiff and Tracy Knick ("Knick"), the Caucasian female who was ultimately selected for the position.

- Based on Knick's answers to the KSA questions, the three person evaluation panel assigned Knick the following scores: 29/30, 29/30 and 26/30.

- Based on plaintiff's answers to the KSA questions, the evaluation panel assigned him the following scores: 15/30 and 22/30. Only two members of the evaluation panel scored plaintiff. The third member of the panel, David Markewitz, recused himself from this process because he had a personal

---

[7] Stockton-Sooy notes in her resume that in 2007 she completed fifteen credits of Blackboard training. *See* Pl.'s Ex. B8. Blackboard is a popular virtual learning platform. *See* http://www.blackboard.com/k12/online-learning-platforms.html.

[8] Originally, there were seven (7) applicants, five females and two males, for the ISS-FL position. The hiring panel determined none of these applicants was qualified and re-advertised the vacancy. Plaintiff applied when the position was re-advertised.

4

relationship with plaintiff.

- o At the time of the 2008 ISS-FL vacancy, Knick (i) had a master's degree in a foreign language, (ii) was certified in French and had experience with at least two other languages, and (iii) had experience as a district-wide administrator, specifically serving as the coordinator of the World Languages and AVID program for Brevard Public Schools from 2006 to 2008.[9]

- o By comparison, plaintiff (i) had a bachelor's degree in Japanese from the University of Maryland (Japan Campus), a master's degree in business administration from Loyola University, and a Ph.D. in communications from the University of Southern Mississippi, and (ii) was certified in five languages (German, Spanish, French, Japanese, and ESL).[10] Plaintiff, however, had never held a district-wide administrative position.

- o On September 9, 2008, after learning that he had not been selected for either the distance learning position or ISS-FL position, plaintiff initiated EEO counseling at DoDEA, raising allegations of discrimination on the basis of race, age and sex arising from his non-selection for these positions.

- o On September 24, 2008, plaintiff filed a formal administrative complaint with DoDEA, alleging that his non-selection for the distance learning and ISS-FL positions was motivated by race, gender, and age discrimination.

- o Approximately six months after plaintiff filed a formal grievance against DoDEA, three female teachers contacted DoDEA's EEO office regarding an incident in plaintiff's classroom.

- o Generally, plaintiff was alleged to have allowed high school students to categorize other DoDEA teachers according to their appearance, sexuality, and other behaviors. Specifically, students discussed teachers' physical appearances and mannerisms and placed them into several categories including: "Geeks," "Gay," "Most Likely to Carry a Gun," "Pedophile," "Teacher I'd Like to F**k," and "Smash-able."

- o Following this incident several teachers were upset and concerned, and at least one female teacher confronted plaintiff. During this encounter, plaintiff allegedly called the female teacher "baby" and told her "Babe, you better back off."

- o Thereafter, plaintiff's classroom conduct was investigated by DoDEA

---

[9] Brevard County Public Schools is a large school district with over 70,000 students.

[10] Plaintiff claims that ESL is a separate language and the Secretary does not dispute this claim.

officials and ultimately a letter of reprimand was issued on June 3, 2009, to the plaintiff finding that he lost control of his classroom.[11]

Following the completion of the DoDEA and EEOC's investigations and issuance of the EEOC's final order and right to sue letter,[12] plaintiff filed the instant lawsuit. He raises three claims: (i) Title VII disparate treatment, (ii) ADEA disparate treatment, and (iii) Title VII retaliation. At issue now is whether defendant's motion seeking summary judgment on all of plaintiff's claims should be granted.

## II.

The standard for summary judgment is too well-settled to warrant extended discussion. In essence, to prevail on his summary judgment motion, the defendant, the Secretary of Defense, must establish that there is "no genuine issue as to any material fact" and that plaintiff "has failed to make a showing sufficient to establish the existence of an essential element" of each of his claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56. A genuine dispute exists if "there is sufficient evidence on which a reasonable jury could return a verdict in favor of the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating this question, courts must "view the evidence in the light most favorable to . . . the nonmovant." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The nonmovant, however, cannot rely on "mere allegations;" rather, the nonmovant "must set forth specific facts that

---

[11] The letter of reprimand was issued after plaintiff had complained of discrimination to DoDEA officials, but before the matter was referred to the EEOC on October 6, 2009.

[12] On April 27, 2011, the EEOC granted the Agency's request for summary judgment, finding no evidence of intentional discrimination. Plaintiff appealed the EEOC's decision within the agency. On February 29, 2016, the EEOC Administrative Law Judge in charge of plaintiff's appeal issued a written decision denying the appeal. On April 15, 2016, the DoDEA issued its Final Order adopting the EEOC's findings and dismissing plaintiff's complaint of discrimination.

go beyond the mere existence of a scintilla of evidence." *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013) (internal quotations and citations omitted). And the facts on which the non-movant relies must appear in the summary judgment record and be legally admissible. *See* Fed. R. Civ. P. 56(c)(1) and (2).

For the reasons that follow, these principles applied here make clear that the Secretary has met his summary judgment burden and must be granted summary judgment on plaintiff's Title VII and ADEA disparate treatment claims and plaintiff's Title VII retaliation claim.

### A.

Plaintiff, who self-identifies as a Hispanic male and is over the age of forty, applied for two teaching/administrative vacancies posted by the DoDEA, but was not selected for either position. Both positions were filled instead by Caucasian women, one of whom was younger than the plaintiff. Plaintiff asserts that he was not hired for these positions because the DoDEA intentionally discriminated against him on the basis of his race, sex and age.[13]

Plaintiff can attempt to establish his claims for race, gender or age discrimination in two ways: (i) by proffering direct evidence of discrimination, or (ii) by establishing a *prima facie* case of discrimination and demonstrating "that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 213–14 (4th Cir. 2007) (quoting *Hill v.*

---

[13] Disparate treatment cases involve allegations "that an employer has treated that particular person less favorably than others because of the plaintiff's race, color, religion, sex, or national origin." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 985–86 (1988).

7

*Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (*en banc*)). Here, the summary judgment record reveals no direct evidence of race/ethnic, sex, or age[14] discrimination. Thus, plaintiff must proceed here under *McDonnell Douglas'* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

To establish a *prima facie* case under either Title VII or the ADEA, an employee must show that he is (1) a member of a protected class; (2) he applied for the position in question; (3) he was qualified for the position; (4) he was rejected for the position; and (5) his rejection occurred under circumstances giving rise to an inference of unlawful discrimination, namely that the defendant-employer continued to seek or accept applications from persons outside the protected class with equal or lower qualifications than plaintiff's. *See Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006); *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998); *Henson v. Liggett Group, Inc.*, 61 F.3d 270, 274 (4th Cir. 1995). Only after establishing a *prima facie* case does the burden of production shift to the employer "to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Hill*, 354 F.3d at 285. If the employer meets this burden of production and articulates a legitimate non-discriminatory reason for the employment action, "the *McDonnell Douglas* framework with its presumptions and burdens disappear[s], and the sole remaining issue [is] discrimination vel non." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (internal quotation marks and

---

[14] In his deposition, plaintiff essentially concedes that he was not discriminated against on the basis of age, at least with regard to one position. When asked "[d]o you believe that you were denied these two positions based on your age," plaintiff answered, "Not so much because in one case, the lady was almost – Ms. Stockton-Sooy was almost my age." Pl.'s Dep. 17:5–8.

citations omitted). In other words, the burden shifts back to the employee to show there is a triable issue of material fact as to whether "the employer's stated reasons 'were not its true reasons, but were a pretext for discrimination.'"[15] *Hill*, 354 F.3d at 285 (quoting *Reeves*, 530 U.S. at 143).

In this case, plaintiff was a member of multiple protected classes – age, race/ethnicity and gender – and applied for the distance learning and ISS-FL positions advertised by the DoDEA. Although, as DoDEA's human resource department concluded, plaintiff was minimally qualified for the positions, his applications were ultimately rejected for both positions in favor of ostensibly better qualified candidates. Therefore, the only element of the *prima facie* case that is in dispute is whether defendant's selection of other candidates for these positions gives rise to an inference of unlawful discrimination.

Here, plaintiff has not produced any evidence that supports an inference or creates a triable issue of fact that the DoDEA's decision to hire Stockton-Sooy for the distance learning position and Knick for the ISS-FL position resulted from any unlawful race, age, or gender animus against plaintiff. Instead, the summary judgment record reflects that both Stockton-Sooy and Knick possessed certain qualifications for their respective positions that plaintiff did not. Specifically, Stockton-Sooy had experience developing virtual curriculum and teaching according to an online format, including extensive knowledge of Blackboard software. Plaintiff did not have similar experience with virtual

---

[15] In other words, the burden of establishing pretext merges "with the ultimate burden of persuading the court that the employee has been the victim of intentional discrimination." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

9

learning software. The DoDEA hiring officials found this additional qualification to be important, and ultimately this distinction elevated Stockton-Sooy above plaintiff in the DoDEA's hiring calculus. Similarly, Knick had experience as a district-wide administrator, administrative experience that plaintiff lacked. Again, DoDEA hiring officials found Knick's additional qualifications to be a compelling reason to hire her over plaintiff. In making the decision the hire Knick and Stockton-Sooy over plaintiff, DoDEA officials made a quintessential discretionary employment decision and it is inappropriate for a federal court to substitute its judgment for the judgment of a hiring official in the absence of discriminatory animus. This point is well settled in the law, as the Fourth Circuit has consistently stated that a federal court "does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination. . . . [a federal court's] sole concern is whether the reason for which the defendant discharged the plaintiff was discriminatory." *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998).

Aware that his claims fail unless he shows that the decision to hire these two women over him was infected by an impermissible bias, plaintiff offers a number of arguments. None is persuasive.

First, plaintiff argues that DoDEA initially determined that Knick was unqualified for the position as advertised and made a special exception for her. He implies that because a "special exception" was allegedly made for a younger, white female, an inference of discrimination arises. But the summary judgment record reveals that no special exception was made for Knick. Specifically, the record demonstrates that during

the initial review of candidates for the ISS-FL position DoDEA's human resource administrators mistakenly determined that Knick did not possess the requisite experience with more than one foreign language. Based on Knick's resume and her testimony before the EEOC, which appeared in the summary judgment record, it is clear that Knick possessed experience with more than one foreign language at the time of her application. *See* Pl.'s Ex. A5 and A20. Plaintiff has offered no evidence to rebut this fact and therefore has failed to demonstrate that Knick lacked a requisite qualification. Moreover, plaintiff cannot rebut the fact that Knick possessed significant administrative experience that plaintiff lacked.

Second, plaintiff argues that a procedural irregularity in the hiring process, namely that most applicants were given three evaluators and that he was only afforded two evaluators, gives rise to an inference of discrimination.[16] More pointedly, plaintiff implies that one of the female evaluators intentionally reduced his score to ensure a female candidate was selected,[17] and that had plaintiff been granted three neutral evaluators he would have scored as highly as Knick. Plaintiff's argument defies reason and basic mathematics. First, plaintiff does not dispute that evaluator Reynaldo Toquero was a neutral scorer. Mr. Toquero gave Knick a score of 29 and plaintiff a score of 22. Even assuming plaintiff were to be given two additional scores of 30 (eliminating any alleged

---

[16] It is worth repeating that the only reason plaintiff was evaluated by two instead of three members of the panel is that one of the panel members had a personal relationship with plaintiff and appropriately recused himself from evaluating plaintiff's application.

[17] Notably, another male candidate was also scored by the hiring panel and received an average score of 20. Specifically, Ms. Eisinger assigned Mr. Jackson a score of 20 and assigned plaintiff a score of 15. *See* Pl's Ex. A7. This fact is noteworthy because the hiring panel determined that plaintiff was not even the most qualified male applicant.

bias), his total score would only be 82. Even if with this artificially high score, plaintiff would still have scored below Knick's actual score of 84.

It bears repeating that plaintiff has not produced evidence giving rise to an inference of unlawful discrimination and therefore has not established a *prima facie* case for Title VII or ADEA discrimination.

Assuming, arguendo, that plaintiff could establish a *prima facie* case of discrimination, the DoDEA has satisfied its burden at the second step of the *McDonnell-Douglas* burden-shifting framework by proffering a legitimate, nondiscriminatory reason for plaintiff's non-selection. Specifically, the DoDEA has asserted that its hiring officials believed that the two other candidates were more qualified. The record supports this belief as it appears that both Stockton-Sooy and Knick had qualifications that plaintiff did not. Thus, defendant's proffered non-discriminatory reason is certainly plausible. Once an employer has offered a non-discriminatory reason for its decision, as defendant has here, "the plaintiff cannot seek to expose [the employer's] rationale as pre-textual by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it." *Hux v. City of Newport News*, 451 F.3d 311, 315 (4th Cir. 2006). Because DoDEA produced evidence of a legitimate, nondiscriminatory reason for plaintiff's non-selection, it is incumbent on plaintiff to show that DoDEA's "proffered explanation is unworthy of credence."[18] *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

---

[18] The Supreme Court has stated that "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148.

During the course of oral argument on defendant's motion for summary judgment, plaintiff, for the first time, articulated his belief that the DoDEA engaged in a pattern of discriminating against elderly teachers and that its proffered legitimate, nondiscriminatory reason for not hiring plaintiff was merely pretext to mask its true discriminatory motives. In support of this view, plaintiff cited the affidavit of Lori Kimble ("Ms. Kimble") – a female DoDEA employee who applied for four vacancies at the Kaiserslautern School Complex between 2008 and 2010, and was ultimately rejected for each position. Ms. Kimble, who was 53 years old in 2008, was a member of protected classes under both the ADEA and Title VII. Plaintiff cites Ms. Kimble's EEOC complaint against the DoDEA and the EEOC administrative law judge's finding of discrimination in Ms. Kimble's case as evidence that the DoDEA routinely discriminates against applicants on the basis of gender and age. Plaintiff apparently believes that Ms. Kimble's case demonstrates defendant's true discriminatory intent and reveals that defendant's legitimate, nondiscriminatory reason is merely pretext.

It is true that discriminatory intent in any given case may be inferred from "a general pattern of [] discrimination in the practices of a defendant." *Swaso v. Onslow Cty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017), as amended (Aug. 11, 2017) (quoting *Woods v. City of Greensboro*, 855 F.3d 639, 649 (4th Cir. 2017)). It is also true that to establish a pattern of discrimination, plaintiffs often rely on comparator evidence.[19] Importantly,

---

[19] The Fourth Circuit has explained that comparator evidence is particularly important at the pretext stage, holding:

> [A]t this third step [] *McDonnell Douglas* identifie[s] the significance of comparator evidence [which is] especially relevant

13

however, "[t]he similarity between comparators . . . must be clearly established in order to be meaningful." *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008). The inquiry then is "whether there are sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other *prima facie* evidence, would allow a jury to reach an inference of discrimination." *Eaton v. Ind. Dep't of Corr.*, 657 F.3d 551, 556 (7th Cir. 2011).

Here, plaintiff and Ms. Kimble are not true comparators for the purposes of plaintiff's Title VII gender discrimination claim because Ms. Kimble is a female and defendant is a male. In other words, the fact that the DoDEA discriminated against Ms. Kimble, a woman, does not make it more likely that the DoDEA discriminated against plaintiff, a man. In fact, the opposite is true. Thus, Ms. Kimble's case does nothing to bolster plaintiff's claim that he was discriminated against on the basis of his gender and that the defendant's legitimate, nondiscriminatory reason for failing to hiring him was pre-textual.

Whether plaintiff and Ms. Kimble are comparators for the purposes of ADEA discrimination, however, requires closer scrutiny. To be sure, plaintiff and Ms. Kimble are both members of the ADEA's protected class. Moreover, the discrimination Ms. Kimble and plaintiff purportedly suffered occurred around the same time at DoDEA

---

> to a showing of pretext [because] evidence that other employees who were similarly situated to the plaintiff (but for the protected characteristic) were treated more favorably.

*Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 719 (4th Cir. 2013) (internal citations omitted).

schools in Germany. But this is where the commonalities between plaintiff and Ms. Kimble end. Notably, Ms. Kimble appears to have been equally or more qualified than the individuals who were hired in her stead. Plaintiff, by contrast, was not equally or more qualified than the individuals hired in his place. Additionally, it appears that the ultimate decision makers in Ms. Kimble's and plaintiff's cases were completely different persons.[20] Specifically, in Ms. Kimble's case, the decision to hire appears to have been made by Susan Ransom, principal of Landstuhl Elementary and Middle School, with the assistance of human resource specialist Anthony Ates. In plaintiff's case, however, the decision makers were Laura Eisinger, Reynald Toquero and David Markewitz. In other words, the hiring decisions were independently made by different individuals in Ms. Kimble and plaintiff's respective cases. Simply-put, there is insufficient commonality between Ms. Kimble and plaintiff to warrant an inference of discrimination or to create a triable issue of fact.

For all of these reasons, summary judgment must be entered on behalf of the

---

[20] *Xuan Huynh v. U.S. Dep't of Transp.*, 794 F.3d 952, 960 (8th Cir. 2015) ("The fact that different decision makers are involved is . . . strong evidence of noncomparability.") (internal citations and marks omitted); *Ellis v. United Parcel Serv., Inc.*, 523 F.3d 823, 826 (7th Cir. 2008) ("[M]ost of Ellis's purported comparators are not similarly situated to him because they were not subject to the same decisionmaker as Ellis when they purportedly violated the policy. Different decisionmakers may rely on different factors when deciding whether, and how severely, to discipline an employee."); *Smith v. Leggett Wire Co.*, 220 F.3d 752, 762–63 (6th Cir. 2000) (indicating that a comparison is "inapt" where, among other things, the plaintiff and the proposed comparator were disciplined by different decisionmakers); *Robinson v. Int'l Truck & Engine Corp.*, No. 07 C 5161, 2009 WL 901013, at *7 (N.D. Ill. Mar. 31, 2009) ("Plaintiff has not cited, nor has the Court in its own research located, any case in which employees were found to be similarly-situated when the evidence clearly showed that the pertinent employment decisions concerning the plaintiff and the proposed comparator were made by different managers or supervisors.")

Secretary, the defendant in this case, and against plaintiff on his Title VII and ADEA disparate treatment claims.

## B.

Plaintiff's Title VII retaliation claim requires a different analysis, but ultimately fares no better than his disparate treatment claims. The elements of a *prima facie* retaliation claim under Title VII are: (1) engagement in a protected activity; (2) a materially adverse action by the employer;[21] and (3) a causal link between the protected activity and materially adverse action. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *Caldwell v. Johnson*, 289 F. App'x 579, 592 (4th Cir. 2008).

In this case, it is undisputed that plaintiff engaged in protected activity because he filed a formal complaint of discrimination with the EEOC. *See Kubicko v. Ogden Logistics Servs.*, 181 F.3d 544, 551 (4th Cir. 1999) (explaining that "protected activity" for purposes of Title VII retaliation claim requires either "voicing one's opinions" in opposition to discrimination prohibited by Title VII or "making a charge, testifying, or participating in any manner in a Title VII investigation, proceeding, or hearing."). It is

---

[21] In two unpublished decision, panels of the Fourth Circuit have held that the Supreme Court's "materially adverse" standard articulated in *Burlington Northern* applies to both private and federal employees. *See Pueschel v. Peters*, 340 F. App'x 858, 861 (4th Cir. 2009) and *Caldwell*, 289 F. App'x at 579. The Fourth Circuit, though, has yet to address this issue in a reported decision. *See Wells v. Gates*, 336 F. App'x 378, 383, fn. 5 (4th Cir. 2009). Given the Fourth Circuit's unpublished decisions in *Pueschel* and *Caldwell*, and taking into account every other circuit decision on this issue, it is apparent that the Fourth Circuit, if given the opportunity to do so in a published decision, would apply *Burlington Northern's* "materially adverse" standard rather than the "adverse employment action" standard to a federal employee's Title VII retaliation claim. *See, e.g., Webster v. Shulkin*, __ F. App'x __, No. 16-4140, 2017 WL 3772637, at *2 (10th Cir. Aug. 31, 2017); *Kurtz v. McHugh*, 423 F. App'x 572, 578 (6th Cir. 2011); *Taylor v. Solis*, 571 F.3d 1313, 1320 (D.C. Cir. 2009); *Lapka v. Chertoff*, 517 F.3d 974, 985–86 (7th Cir. 2008); *Patterson v. Johnson*, 505 F.3d 1296, 1299 (D.C. Cir. 2007); *Nair v. Nicholson*, 464 F.3d 766, 768–69 (7th Cir. 2006).

16

less clear that plaintiff's receipt of a letter of reprimand is a materially adverse employment action, as the reported decisions are not uniform in this regard;[22] however, it will assumed, without deciding, that the letter of reprimand plaintiff received from DoDEA officials would have dissuaded a reasonable worker from making or supporting future charges of discrimination.[23] *See Hinton v. Virginia Union Univ.*, 185 F. Supp. 3d 807, 826 (E.D. Va. 2016) ("An employment action is 'materially adverse' if it would 'dissuade a reasonable worker from making or supporting a charge of discrimination.'" (quoting *Burlington Northern*, 548 U.S. at 68). But what is unquestionable is that plaintiff's protected activity (*i.e.* filing a charge of discrimination with the EEOC) is not causally linked to the letter of reprimand he received from DoDEA officials.

First, plaintiff cannot rely on temporal proximity alone because nearly six months passed between the date plaintiff filed a formal grievance with DoDEA officials and the date he received the formal letter of reprimand from DoDEA officials. The Fourth Circuit has previously held that a lapse of three to four months between the employer's knowledge of protected activity and the alleged retaliation "is too long to establish a causal connection

---

[22] *See Bhatti v. Trustees of Boston Univ.*, 659 F.3d 64, 73 (1st Cir.2011) (holding that a reprimand letter that contains no tangible adverse consequences, but rather is merely "directed at correcting some workplace behavior that management perceived as needing correcting" is not an adverse employment action for the purposes of a Title VII retaliation claim). *Contra Hamby v. Assoc. Ctrs. for Therapy*, 230 F. App'x. 772, 778 (10th Cir. 2007) ( "Hamby began receiving an increased number of reprimands, a challenged action which a reasonable employee would find materially adverse.").

[23] As the district court in *Hinton* also noted, "[t]his 'materially adverse action' standard is explicitly less restrictive than the 'adverse employment action' standard for discrimination claims." *Hinton*, 185 F. Supp. 3d at 826 (quoting *White*, 548 U.S. at 62).

by temporal proximity alone."[24] *Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x. 229, 233–34 (4th Cir. 2006). Therefore, plaintiff must produce some evidence beyond temporal proximity to satisfy the causation element of a Title VII retaliation claim.

In this case, plaintiff has produced no such evidence. Not only was the letter of reprimand received six months after the protected activity occurred, but it is clear that the letter was wholly unrelated to any protected activity. Rather the letter of reprimand was the result of plaintiff's own misconduct. In this regard, plaintiff permitted his students to objectify other teachers in an explicitly sexual manner, regardless of whether he actually encouraged the activity. He also allowed students to categorize his fellow teachers as "geeks," "gay" or "gun-toting." And if this were not enough, when confronted by his colleagues about the activities that were permitted to go on inside his classroom, he continuously referred to a younger female colleague as "baby" or "babe" despite being asked not to do so.[25] Given the facts underlying the letter of reprimand, there is little reason to dispute that the letter was warranted. Moreover, it bears repeating that there is no reason to believe the letter is causally linked to plaintiff's complaints of discrimination.

Because plaintiff has produced no evidence that his letter of reprimand was causally

---

[24] *See also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (stating in summary judgment context, "the cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be 'very close' "); *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (concluding in summary judgment context, a ten-week gap between protected activity and termination "gives rise to a sufficient inference of causation" but was "sufficiently long so as to weaken significantly the inference of causation between the two events").

[25] In his deposition, plaintiff concedes he called a female colleague "babe." *See* Boue Dep. 134:1-16, September 22, 2017.

related to his protected activity, he has not established a *prima facie* case of Title VII retaliation and summary judgment must be entered in favor of the Secretary on this plaintiff's retaliation claim.

### III.

In sum, this opinion makes clear that plaintiff has not identified any record evidence that would present a triable issue of material fact for a jury on whether the decisions made by the DoDEA's two selection committees were infected by impermissible age, race/ethnicity or gender bias. But it is also important to note what this opinion does not do. This opinion does not conclude that plaintiff was unqualified for the positions, or that he would not have performed well in those positions. The personnel committees had difficult judgments to make and federal courts must not second-guess the sound judgments of hiring officials where there is no evidence of discrimination. Federal courts only police the conduct of employers when their actions are the result of impermissible biases. Here, there is simply no summary judgment evidence that plaintiff was not hired because of an impermissible bias. Accordingly, the Secretary's motion for summary judgment must be granted.

An appropriate order will follow.

Alexandria, Virginia
April 17, 2018

_____/s/_____
T. S. Ellis, III
United States District Judge